T.C. Memo. 2008-243

UNITED STATES TAX COURT

CHARLES D. HELBIG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8011-06.                    Filed October 29, 2008.

        R determined that P is liable for additions to tax
pursuant to sec. 6653(a)(1) and (2), I.R.C., for his 1983,
1984, and 1985 tax years and pursuant to sec. 6661(a),
I.R.C., for his 1983 tax year.

        <u>Held</u>: P is liable for the additions to tax.

<u>Robert L. Goldstein</u> and <u>Amanda F. Vassigh</u>, for petitioner.

<u>Andrew R. Moore</u> and <u>Catherine J. Caballero</u>, for respondent.


            MEMORANDUM FINDINGS OF FACT AND OPINION

        WHERRY, <u>Judge</u>:  This case is before the Court on a petition

for redetermination of three affected items notices of deficiency

in which respondent determined that petitioner is liable for the
following additions to tax:

| | Additions to Tax | | |
|------|------|------|------|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
| 1983 | $511.75 | [1] | $2,558.75 |
| 1984 | 7.00 | [1] | --- |
| 1985 | 40.30 | [1] | --- |

[1]50 percent of the interest due on deficiencies of
$10,235, $140, and $806 for the 1983, 1984, and 1985
tax years, respectively.

Unless otherwise indicated, section references are to the
Internal Revenue Code, as amended and in effect for the tax years
at issue.  Rule references are to the Court's Rules of Practice
and Procedure.  The issue for decision is whether petitioner is
liable for each of the additions to tax determined by respondent.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated
facts and accompanying exhibits are hereby incorporated by
reference into our findings.  At the time he filed his petition,
petitioner resided in California.

Petitioner earned a bachelor of science degree in business
administration from the University of San Francisco in 1942.
Thereafter, he served in the Army until 1946 and then worked for
Cosgrove & Company, an insurance broker.  Around that time, he
began investing in the stock market and in real estate.  Some of
those investments were very profitable.  During the tax years at

issue, petitioner was employed by H.S. Crocker Co., a printing company. He worked in their advertising department.

In 1983 Charles B. Toepfer (Mr. Toepfer), a financial planner, advised petitioner to invest in a limited partnership called Contra Costa Jojoba Research Partners (CCJRP). Mr. Toepfer was an active promoter of CCJRP and also served as its general partner.

Before his investment in CCJRP, petitioner and his advisers (petitioner's friend who was a lawyer, petitioner's accountant, and petitioner's broker) apparently reviewed or had available to review a one-and-a-half page "PRIVATE PLACEMENT" letter from Proadvisor Financial & Insurance Services. That letter and related documents apprised their readers that an investment in CCJRP was available only to investors "who anticipate that for the current taxable year they will have gross income equal to $65,000 or taxable income, a portion of which will be subject to Federal Income tax at a marginal rate of 50%." In a section of the letter entitled "INVESTMENT OBJECTIVES", the letter indicated "Tax benefit for 1983 - approximately 232%". In its "HIGHLIGHTS OF INVESTMENT" section, the letter proclaimed that an investment in CCJRP would mean "significant first year tax deductions of approximately 232% with subsequent year tax deductions."

Petitioner and his wife Josefina, who is now deceased, acquired 10 units in CCJRP for $27,500, or $2,750 per unit. They

paid $11,000 upon closing and signed a promissory note for the remaining $16,500.[1]

In 1983, 1984, and 1985, CCJRP filed with the Internal Revenue Service and provided to petitioner Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., in which CCJRP allocated to petitioner ordinary losses of $25,000, $490, and $2,582, respectively. Petitioner and his wife claimed on their 1983, 1984, and 1985 joint Forms 1040, U.S. Individual Income Tax Return, ordinary losses relating to their interest in CCJRP of $25,000, $490, and $2,582, respectively, as deductions in computing their total income. Those tax returns were prepared by Edward R. Sheppie (Mr. Sheppie), a professional tax preparer who petitioner asserts was also a certified public accountant (C.P.A.).

On May 30, 1989, respondent sent petitioner a notice of final partnership administrative adjustment (FPAA) issued to CCJRP for the 1983 tax year.[2] On July 13, 1989, a petition in

[1]They appear to have paid off the remaining discounted balance of that note--$9,075--on or about Apr. 19, 1990. By 1990, CCJRP was no longer communicating with its investors and petitioner became concerned that the investment was in serious trouble. He wrote to other investors and to CCJRP's general partner but apparently failed to investigate fully the Federal tax issues that had arisen regarding the investment.

[2]This development together with the payments due on the note spurred petitioner to considerable correspondence with CCJRP, other investors, and the promoters and general partner. That correspondence, particularly a May 24, 1990, letter reflects that
(continued...)

the name of CCJRP, Charles B. Toepfer, Tax Matters Partner, was filed with the Court at docket No. 17323-89. On January 28, 1994, the parties filed a stipulation to be bound by the result in Utah Jojoba I Research v. Commissioner (Utah Jojoba I), a case docketed at No. 7619-90.

The Court issued an opinion in Utah Jojoba I on January 5, 1998, in which it held that the partnership at issue was not entitled to deduct its losses for research and development expenditures. See Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. On April 11, 2005, the Court entered a decision against CCJRP upholding as correct the partnership item adjustments as determined and set forth in the FPAA for CCJRP's 1983, 1984, and 1985 tax years. That decision was not appealed.

On March 13, 2006, respondent issued the aforementioned notices of deficiency. Petitioner then filed a timely petition with this Court. A trial was held on May 21, 2007, in San Francisco, California.

OPINION

I. Respondent's Requests for Admissions

On February 26, 2007, respondent served on petitioner's counsel, Robert L. Goldstein, requests for admissions. Respondent filed that document with the Court on the following

---

[2](...continued)
petitioner had tentatively reached the conclusion that a profit from his investment in CCJRP was very unlikely.

day, February 27, 2007.  Respondent at page 6 requested the following admission and others like it: "21. Petitioner did not exercise due care when he claimed losses stemming from his involvement with CONTRA COSTA JOJOBA RESEARCH PARTNERS on his 1983-1985 federal income tax returns."

For unknown reasons, neither petitioner nor his attorney ever responded to the requests.  Therefore, pursuant to Rule 90(c), each matter set forth in the requests was automatically deemed admitted 30 days after the date of service of the requests.[3]  See Morrison v. Commissioner, 81 T.C. 644, 647 (1983).  The effect of petitioner's admissions is that the matters admitted are "conclusively established unless the Court on motion permits withdrawal or modification of the [admissions]."  Rule 90(f).

Petitioner has not filed a motion under Rule 90(f) seeking withdrawal or modification of the admissions.  In any event, even if he requested this relief and we granted his request, the outcome of this case would be the same.  In other words, the

_____

[3]Effective Mar. 1, 2008, Rule 90(b) was amended to provide that a request for admissions "shall advise the party to whom the request is directed of the consequences of failing to respond as provided by paragraph (c)."  The explanation for the amendment states that "Current Rule 90(b) can be a trap for the unwary. Taxpayers, especially pro se taxpayers, are more likely to respond to requests for admissions if they know the severe consequences of failure to respond."  The amended version of Rule 90(b) does not apply to respondent's request for admissions, which was filed more than a year before the amendment took effect.

outcome of this case need not and does not rest upon the deemed admissions.  As explained below, the evidence in this case compels the same result.

II.  Additions to Tax Under Section 6653(a)(1) and (2)

Section 6653(a)(1) and (2) imposes additions to tax if any part of any underpayment of tax is due to negligence or disregard of rules and regulations.[4]  For the purposes of this statute, negligence is defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299).

The Court of Appeals for the Ninth Circuit, to which an appeal would ordinarily lie in this case, has held that a determination as to negligence for purposes of sections 6653(a) and 6661(a) in a case involving a deduction for loss that results from an investment "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the

---

[4]Those additions to tax are for:  (1) An amount equal to 5 percent of the underpayment and (2) an amount equal to 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment which is attributable to negligence. That interest on which the penalty is computed is the interest for the period beginning on the last date prescribed by law for payment of the underpayment (without consideration of any extension) and ending on the date of the assessment of the tax. Sec. 6653(a)(1) and (2).

deduction."  Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.

Petitioner contends that he was not negligent because, before investing in CCJRP, he sought the advice of several professionals including (1) Mr. Toepfer, (2) Mr. Sheppie, (3) petitioner's broker at Dean Witter, and (4) an attorney.[5]  He argues that he invested in CCJRP intending primarily to make a profit, not for tax benefits.  As for the reasonableness of claiming the deductions, he asserts reliance on Mr. Sheppie.  Respondent challenges each of petitioner's reasonable-reliance arguments.

Although reasonable reliance on professional advice may serve as a defense to the additions to tax for negligence, see United States v. Boyle, 469 U.S. 241, 251 (1985), petitioner has not demonstrated that he acted with due care with respect to his investment in CCJRP and subsequent deductions claimed in 1983, 1984, and 1985, for losses relating to that investment.  Our determination as to negligence is a highly factual inquiry, and petitioner has failed to provide sufficient evidence to persuade us otherwise.  See Bass v. Commissioner, T.C. Memo. 2007-361 ("[T]he determination of negligence is highly factual.").

---

[5]At trial, petitioner described the attorney, whose name was Rex, as "A very good friend of mine".

CCJRP's underlying activity lacked legitimacy from its inception, as we decided in Utah Jojoba I.  See Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6 ("[W]e hold that Utah I was not actively involved in a trade or business and also lacked a realistic prospect of entering a trade or business."); see also Welch v. Commissioner, T.C. Memo. 2002-39.  Because CCJRP and the jojoba partnership at issue in Utah Jojoba I are essentially identical, we need not rehash in detail the license agreement and the R & D agreement entered into between CCJRP and U.S. Agri Research & Development Corp (the same entity with whom the partnership at issue in Utah Jojoba I entered into a license agreement and a research and development (R & D) agreement).  Suffice it to say that "the R & D agreement was designed and entered into solely to provide a mechanism to disguise the capital contributions of the limited partners as currently deductible expenditures and thus reduce the cost of their participation in the farming venture."  Utah Jojoba I Research v. Commissioner, supra.  As we have observed in a number of other cases involving nearly identical jojoba partnerships:

> First, the principal flaw in the structure of Blythe II was evident from the face of the very documents included in the offering. A reading of the R & D agreement and licensing agreement, both of which were included as part of the offering, plainly shows that the licensing agreement canceled or rendered ineffective the R & D agreement because of the concurrent execution of the two documents. Thus, the partnership was never engaged, either directly or indirectly, in the conduct of any research or

experimentation. Rather, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement. Any experienced attorney capable of reading and understanding the subject documents should have understood the legal ramifications of the licensing agreement canceling out the R & D agreement. However, petitioners never consulted an attorney in connection with this investment, nor does it appear that they carefully scrutinized the offering themselves.

Christensen v. Commissioner, T.C. Memo. 2001-185; Serfustini v. Commissioner, T.C. Memo. 2001-183; Nilsen v. Commissioner, T.C. Memo. 2001-163; see also Finazzo v. Commissioner, T.C. Memo. 2002-56; Carmena v. Commissioner, T.C. Memo. 2001-177.

Although petitioner sought some advice and conducted some of his own research before investing in CCJRP, this case resembles other jojoba partnership cases in which this Court has consistently sustained the imposition of an addition to tax under section 6653(a)(1) and (2).  See, e.g., Christensen v. Commissioner, supra; Serfustini v. Commissioner, supra; Nilsen v. Commissioner, supra.

For example, Christensen v. Commissioner, supra, involved taxpayers who had obtained the advice of their C.P.A. before investing in a jojoba partnership.  In sustaining the imposition of an addition to tax under section 6653(a)(1) and (2), the Court noted that the C.P.A. "did not provide petitioners with a written opinion about the investment."  Id.  Moreover, the Court observed that the record lacked evidence demonstrating that the C.P.A.

"conducted any independent investigation to determine whether the specific research and development proposed to be conducted by or on behalf of the partnership would have qualified for deductions under section 174." Id.

As was the case in Christensen, petitioner's C.P.A., Mr. Sheppie, was deceased and could not testify at trial. Petitioner's broker at Dean Witter and petitioner's friend who was an attorney with whom petitioner discussed investing in CCJRP did not testify either. Importantly, none of those individuals provided petitioner with a written opinion concerning his investment in CCJRP. As a result, the nature of their advice to petitioner is unclear.

At trial, perhaps due to age and the more than two decades that had passed since the events at issue had occurred, petitioner could provide only vague or equivocal descriptions of the advice offered by Mr. Sheppie, petitioner's broker at Dean Witter, and petitioner's friend who was an attorney.[6] Further, petitioner testified that neither he nor his advisers had reviewed the prospectus, R & D agreement, or license agreement

---

[6]Petitioner testified that Mr. Sheppie told him about sec. 174 and that Mr. Sheppie thought that an investment in CCJRP was a good investment. Regarding the broker at Dean Witter, petitioner testified that that individual "wasn't up on Jojoba" and "From his knowledge it was a -- it appeared to be a good investment." Petitioner provided no information at to the nature of his attorney/friend's advice regarding CCJRP. He testified only that he had spoken to that individual "friend to friend".

before he invested in CCJRP.[7]  To the extent that petitioner

relied on the advice of Mr. Toepfer, a promoter with an obvious

personal interest in CCJRP, this reliance constitutes a failure

to exercise due care before investing in CCJRP.  See Hansen v.

Commissioner, 471 F.3d 1021, 1031 (9th Cir. 2006) ("We have

previously held that a taxpayer cannot negate the negligence

penalty through reliance on a transaction's promoters or on other

advisors who have a conflict of interest."), affg. T.C. Memo.

2004-269.

The one-and-a-half page promotional private placement

letter touting the substantial tax benefits of investing in

CCJRP--upon which petitioner and his advisers relied--should have

served as an ample warning regarding the suspect nature of CCJRP.

Indeed, in 1983 petitioner invested $11,000 in CCJRP and that

same tax year claimed a $25,000 tax deduction--equal to roughly

---

[7]In his reply brief, petitioner asserts that when he
invested in CCJRP those documents had not yet been created.  He
appears to be correct in that regard--at least to some extent.
Petitioner invested in CCJRP on Dec. 5, 1983, and the R & D and
license agreements were not entered into until Dec. 30, 1983.
But that fact is inconsequential on the issue of petitioner's
liability for the additions to tax now at issue.  The private
placement letter relied upon by petitioner and his advisers
referred to a "research and development contract" and an "option
to license".  There is no evidence that petitioner or his
advisers ever requested those documents.  Moreover, the fact that
the private placement letter invited its readers to "CONTACT THIS
OFFICE FOR PROSPECTUS OR FURTHER INFORMATION" seemingly belies
petitioner's contention that a prospectus did not exist.  In any
event, if there was no prospectus, as petitioner claims, then he
entered into this investment and claimed its advertized tax
benefits essentially sight unseen, which appears negligent.

227% of his initial investment--for losses relating to that investment.[8]  The deduction of such a large loss in proportion to his initial investment claimed so close to when that investment was made should have raised a red flag to petitioner regarding the propriety of deductions relating to CCJRP.[9]

In the end, petitioner's vague testimony concerning the advice that he purportedly received before he invested in CCJRP and claimed the subsequent deductions is insufficient to support his reasonable-reliance argument.  See Sacks v. Commissioner, 82 F.3d at 920 ("The [Sackses] offered virtually no evidence of advice actually given.").  That petitioner did not even request vital documents relating to CCJRP before making his investment and did not heed obvious warning signs regarding CCJRP's suspect nature is particularly troubling.  The fact that petitioner passed by his advisers a one-and-a-half page advertisement is insufficient to shield him from the section 6653(a)(1) and (2)

---

[8]Although petitioner also signed a promissory note for $16,500, the evidence of record is unclear as to whether he paid that note in full.  Petitioner appears to have paid CCJRP only $9,075 in April 1990.

[9]The fact that Mr. Sheppie prepared petitioner's 1983, 1984, and 1985 joint Federal income tax returns is insufficient to shield him from liability for the sec. 6653(a)(1) and (2) additions to tax.  Aside from petitioner's vague testimony, there is no evidence in the record as to the specific nature of Mr. Sheppie's advice.  As far as we can tell, Mr. Sheppie merely transferred the losses from the Schedules K-1 provided by CCJRP onto petitioner's returns.  There is no evidence that establishes otherwise.

additions to tax.  See <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206 (concluding that passing an "offering circular by their accountants for a 'glance'" was insufficient to establish "consultation with an expert").  Petitioner's actions were simply unreasonable under the circumstances of this case, and he is therefore liable for the section 6653(a)(1) and (2) additions to tax.

III. <u>Addition to Tax Under Section 6661(a)</u>

Section 6661(a) provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement.[10]  There is a "substantial understatement" of an individual's income tax for any taxable year where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000.  Sec. 6661(b)(1)(A).  However, the amount of the understatement is reduced to the extent attributable to an item (1) for which there is or was substantial authority for the taxpayer's treatment thereof, or (2) with respect to which the relevant facts were adequately

---

[10]In 1983 sec. 6661(a) provided for a 10-percent addition to tax.  The amount of the sec. 6661(a) addition to tax was later increased to 25 percent for additions to tax assessed after Oct. 21, 1986. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951.

disclosed on the taxpayer's return or an attached statement.  See sec. 6661(b)(2)(B).[11]

Petitioner raises no distinct arguments with respect to the section 6661(a) addition to tax.  He does not argue that he had substantial authority for claiming the loss on his 1983 Federal income tax return, and has not demonstrated that he adequately disclosed the facts relevant to his investment in CCJRP on that tax return or on an attached statement.

Rev. Proc. 83-21, 1983-1 C.B. 680, applicable to tax returns filed in 1983, lists information that is deemed sufficient disclosure with respect to certain items, none of which is applicable in this case.  Notwithstanding the inapplicability of Rev. Proc. 83-21, supra, a taxpayer may make adequate disclosure if the taxpayer provides sufficient information on the return to enable the Commissioner to identify the potential controversy involved.  See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987).  However, "Merely claiming the loss, without further explanation," as petitioner did in this case, was insufficient to alert respondent to the controversial nature of the partnership

---

[11]Where the understatement at issue is attributable to a tax shelter, adequate disclosure is inconsequential; and, in addition to substantial authority, the taxpayer must demonstrate a reasonable belief that the tax treatment claimed was more likely than not proper.  Sec. 6661(b)(2)(C).  Because the result would be the same in this case whether or not we label CCJRP a tax shelter, we will analyze petitioner's entitlement to a reduction of the sec. 6661(a) addition to tax as though CCJRP were not a tax shelter.

loss claimed on the tax return.  See Robnett v. Commissioner, T.C. Memo. 2001-17.  In addition, petitioner did not attach any statement to his 1983 return.  As a result, we sustain the imposition of a section 6661(a) addition to tax.

IV.  Capital Loss

Section 165(a) generally allows a deduction for losses sustained within the taxable year.  Section 165(c) limits losses that can be deducted by individual taxpayers, permitting deduction only for losses incurred in a trade or business, a profit-making activity (though not connected with a trade or business), or from a casualty or theft.  Petitioner bears the burden of proof on this issue.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

A loss is deductible only for the taxable year in which it is sustained.  Sec. 1.165-1(d)(1), Income Tax Regs.  In order to be "sustained", the loss must be "evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year."  Id.  "I.R.C. § 165 losses have been referred to as abandonment losses to reflect that some act is required which evidences an intent to discard or discontinue use permanently."  Gulf Oil Corp. v. Commissioner, 914 F.2d 396, 402 (3d Cir. 1990), affg. 86 T.C. 115 (1986), 87 T.C. 135 (1986), and 89 T.C. 1010 (1987), affg. in part and revg. in part 86 T.C. 937 (1986).

On brief, citing section 165(a), petitioner argues that he is entitled to deduct an "$11,000 capital loss on his 1983 tax return" as a result of his investment in CCJRP. In support of that argument he asserts "that the moment he paid his money over to CCJRP, the investment was lost." In his reply brief, he argues--without providing any support--that if the Court does not allow the capital loss deduction in 1983, "he is entitled to the loss on his 1984 or 1985 tax return." He does not acknowledge section 165(c) in either his brief or reply brief.

The evidence of record flies in the face of petitioner's contention that his investment in CCJRP was worthless in 1983 or, in the alternative, in 1984 or 1985. Indeed, as respondent points out, "In 1990 and 1991, petitioner was still pursuing his investment in Contra Costa". In that regard, the evidence of record reflects that petitioner corresponded with CCJRP throughout 1990 and into 1991 and that he appears to have paid CCJRP $9,075 in April 1990. See supra note 8. As the Court of Appeals for the Seventh Circuit has observed, "Investors would love to hold onto an asset in the hope that it will pay off despite long odds, while retaining the option of taking a deduction if it does not." Corra Res., Ltd. v. Commissioner, 945 F.2d 224, 226 (7th Cir. 1991), affg. T.C. Memo. 1990-133. Not only did petitioner hold onto his investment in CCJRP beyond 1985, he made payments on the promissory note relating to that

investment as late as in April 1990.  Consequently, he has failed to demonstrate entitlement to an $11,000 deduction in 1983, 1984, or 1985 for a capital loss resulting from his investment in CCJRP.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.