T.C. Memo. 2009-150


UNITED STATES TAX COURT


DAVID R. AND SUSAN PACK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23626-07.                    Filed June 24, 2009.


        R determined that Ps are liable for additions to tax
pursuant to sec. 6653(a), I.R.C., for their 1983 tax year
and for an addition to tax pursuant to sec. 6661(a), I.R.C.,
for their 1985 tax year.

        <u>Held</u>: Ps are liable for the additions to tax pursuant
to sec. 6653(a), I.R.C., for their 1983 tax year and
pursuant to sec. 6661(a), I.R.C., for their 1985 tax year.


<u>James G. LeBloch</u>, for petitioners.

<u>Hans F. Famularo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Petitioners are husband and wife.  They were married in 1982.  This case is before the Court on a petition for redetermination of two affected items notices of deficiency in which respondent determined that petitioners are liable for the following additions to tax:[1]

|  | Additions to Tax | | |
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
| 1983 | $612.60 | * | --- |
| 1985 | --- | --- | $2,702 |

*50 percent of the interest due on a deficiency of $12,252 for petitioners' 1983 tax year.

Unless otherwise indicated, section references are to the Internal Revenue Code, as amended and in effect for the tax years at issue.  The issues for decision are whether petitioners are liable for each of the additions to tax listed in the table above.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by

---

[1]Besides the additions to tax listed in the table, respondent also determined that petitioners are liable for a $3,675.60 addition to tax under sec. 6659.  At trial respondent conceded that petitioners are not liable for that addition to tax.  Respondent reiterates that concession on brief.

reference into our findings.  At the time they filed their petition, petitioners resided in California.

Mr. Pack graduated from high school in 1964 and attended several junior colleges in California but never obtained an associate of arts degree.  He was drafted into the Army in 1966 and was discharged after 49 days because of a knee injury.  From 1968 to 1971 he worked in the shipping and receiving department of a motorcycle parts distributor.  He then got a job in the major appliances section at a K-Mart, where he worked his way up to manager.  He eventually left K-Mart and began working in the construction business, first as a superintendent's helper for a friend's construction business and then as an adjustor for a general contractor that did insurance repair work.  In 1978 Mr. Pack obtained a general contractor's license and started his own insurance repair business.

In the late 1970s--around the time he started his business--Mr. Pack was introduced to Leslie George Hukriede, Jr., a certified public accountant (C.P.A.) with his own firm.[2]  Mr. Pack enlisted Mr. Hukriede to prepare his personal and business tax returns, which Mr. Hukriede did from 1979 to the mid-to-late

_____

[2]Mr. Hukriede's name is misspelled "Hookrey" throughout the trial transcript.

1990s.[3]  Those returns include petitioners' 1983 and 1985 Forms 1040, U.S. Individual Income Tax Return, which are at issue.

Unfortunately for petitioners, Mr. Hukriede's advice extended beyond preparing their tax returns.  Mr. Hukriede also recommended investment opportunities to Mr. Pack.  During or before 1981 Mr. Hukriede recommended that Mr. Pack invest in Platte Leasing Associates (Platte), a limited partnership involved in leasing electronic data processing equipment.  Mr. Pack took Mr. Hukriede up on that advice.  On June 19, 1981, Mr. Pack invested $25,047.50 for a limited partner interest in Platte.  He paid $16,297.50 in cash and signed a promissory note due February 15, 1982, for $9,898.44, including $1,148.44 of interest and $8,750 of principal.[4]

On June 30, 1981, Platte became a limited partner of Tulip Leasing Associates (Tulip).  Tulip and Platte had been organized in 1978 and 1979, respectively, by Topspin Data Corp. (Topspin) and Kent M. Klineman, an investment banker and lawyer who, together with his wholly owned entity, Klineman Holding Corp., owned Topspin.  Mr. Klineman was tax matters partner of both

---

[3]Records of the California Board of Accountancy, of which we will take judicial notice, indicate that Mr. Hukriede's C.P.A. license was revoked via a default decision on Apr. 29, 2007, when he failed to respond to the Board of Accountancy's inquiries and subpoena concerning certain matters that it was investigating. Mr. Hukriede had been a licensed C.P.A. in California since Apr. 23, 1971.

[4]Mr. Pack paid the note in full and on time.

Tulip and Platte.  Although Mr. Pack had no actual information one way or the other, he assumed that Mr. Hukriede was compensated by Platte in connection with his investment.[5]

Before investing in Platte, Mr. Pack received a number of documents.  Among them was an investment memorandum.  The first page of that memorandum contained the following warning in all capital letters:

> THE PROJECTIONS CONTAINED IN THIS MEMORANDUM HAVE BEEN PREPARED ON THE BASIS OF VIEWS AS TO FEDERAL INCOME TAX LAW WHICH ARE BELIEVED TO BE REASONABLE BUT ARE SUBJECT TO SUBSTANTIAL QUALIFICATION AND ARE LIKELY TO BE CHALLENGED BY THE INTERNAL REVENUE SERVICE.  THE PROJECTED RESULTS OF AN INVESTMENT ARE BASED UPON THE MOST FAVORABLE POSSIBLE TAX TREATMENT OF A NUMBER OF ISSUES.  IN THE EVENT OF AN AUDIT, AN ADVERSE FINAL DETERMINATION ON ANY OF THESE ISSUES WOULD SIGNIFICANTLY REDUCE OR ELIMINATE VIRTUALLY ALL PROJECTED TAX BENEFITS OF AN INVESTMENT.

The memorandum's first page also warned that "AN INVESTMENT IS SUBJECT TO SIGNIFICANT ECONOMIC AND TAX RISKS AND IS SUITABLE ONLY FOR PERSONS QUALIFIED TO ASSUME THESE RISKS" and that "THE OFFERING INVOLVES CONFLICTS OF INTEREST AND SUBSTANTIAL COMPENSATION TO THE GENERAL PARTNERS AND THEIR AFFILIATES."

In a section of the memorandum titled "Possible Loss of Tax Benefits", the memorandum laid out in detail the "numerous

---

[5]On June 23, 1981, shortly after Mr. Pack invested in Platte, Mr. Hukriede completed a "REPRESENTATIVE'S QUESTIONNAIRE" for Platte in connection with the investment.  In it, he indicated that he had informed Mr. Pack of all compensation that had been paid to him in the preceding 2 years or that may be paid to him in the future by KA Securities, Inc., or related individuals or entities in connection with Mr. Pack's investment.

grounds" on which the Internal Revenue Service might challenge deductions taken by Tulip, Platte, or petitioners.[6]  In a section titled "<u>Increased Risk of Audit</u>", the memorandum noted that

> A substantial number of the partnerships in which the Managing Partner and Mr. Klineman serve as general partners are undergoing audit by the Service. With respect to two of these partnerships, the audits have been completed and the audit agents have recommended that all deductions be disallowed.

In 1983 Platte filed with the Internal Revenue Service and provided to petitioners Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., in which Platte allocated to petitioners an ordinary loss of $32,053.[7]  In turn, on their 1983 joint Form 1040 petitioners claimed an ordinary loss of $13,618 and an investment interest expense deduction of $18,976 relating to their interest in Platte as deductions in computing their taxable income for that year.  For 1985 Platte allocated petitioners $16,602 of ordinary income and $15,741 of investment interest expense.  They reported the $16,602 of ordinary income on a Schedule E, Supplemental Income Schedule, attached to their 1985 Form 1040.  And they claimed an investment interest expense deduction of $15,741 relating to their investment in Platte.  Mr.

---

[6]Among the many tax issues with which the memorandum expressed concern were the "at-risk" rules of sec. 465.  The at-risk rules limit "the amount of possible deductions to the amount an individual has at risk in the venture."  <u>Hill v. Commissioner</u>, 204 F.3d 1214, 1220 (9th Cir. 2000).

[7]The actual losses on the Schedule K-1 totaled $32,054.

Hukriede prepared petitioners' 1983 and 1985 joint Federal income tax returns.

On March 19, 1987, respondent issued petitioners a notice of deficiency regarding their 1983 tax year. Therein, respondent determined that petitioners were liable for a section 6653(a)(1) addition to tax of $239.85 and a section 6653(a)(2) addition to tax of 50 percent of the interest due on $4,797. In response, petitioners filed a petition for redetermination with this Court. This Court eventually dismissed the petition for lack of jurisdiction on the basis that the petition was "invalid because the notice of deficiency purports to determine a deficiency in income tax as a result of petitioners' investment in Platte Leasing Associates, a TEFRA partnership whose 1983 tax treatment will be determined at the partnership level".[8]

On March 16, 1992, respondent sent Tulip a notice of final partnership administrative adjustment (FPAA) for its 1983 tax year.[9] An FPAA was issued to Platte for its 1983 tax year on April 26, 1993. A few days earlier--on April 19, 1993-- respondent had issued an FPAA for Platte's 1985 tax year.

On June 5, 1992, a petition in the name of Tulip, Kent M. Klineman, Tax Matters Partner, was filed with the Court at docket

---

[8]The Court's dismissal order granted a motion to dismiss for lack of jurisdiction that respondent had filed.

[9]At some point respondent also issued FPAAs for Tulip's 1984 and 1985 tax years.

No. 12213-92. That case concerned Tulip's 1983 and 1984 tax years.[10] On July 19, 1993, a petition in the name of Platte, Kent M. Klineman, Tax Matters Partner, was filed with the Court at docket No. 15468-93. That case concerned Platte's 1983 and 1984 tax years. At some point in the first part of 2006 respondent and Mr. Klineman agreed, without objection by any other partner, to sustain respondent's FPAA determinations for Tulip's 1983, 1984, and 1985 tax years and for Platte's 1983 and 1984 tax years.

On June 21, 2006, the Court entered decisions against Tulip and Platte upholding as correct the partnership item adjustments as determined and set forth in the FPAAs for Tulip's and Platte's 1983 and 1984 tax years. On August 2, 2006, the Court entered a decision against Tulip upholding as correct the partnership item adjustments as determined and set forth in the FPAA for Tulip's 1985 tax year.

On July 9, 2007, respondent issued the aforementioned affected items notices of deficiency with respect to petitioners' 1983 and 1985 tax years. Petitioners then filed a timely petition with this Court. A trial was held on December 4, 2008, in Los Angeles, California.

---

[10]A petition concerning Tulip's 1985 tax year was filed on July 19, 1993, at docket No. 15390-93.

OPINION

I. <u>Additions to Tax Under Section 6653(a)</u>

Section 6653(a) imposes additions to tax if any part of any underpayment of tax is due to negligence or disregard of rules and regulations.[11]  For the purposes of this statute, negligence is defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985) (quoting <u>Marcello v. Commissioner</u>, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299).

The Court of Appeals for the Ninth Circuit, to which an appeal would lie in this case absent a stipulation to the contrary, has held that a determination as to negligence for purposes of sections 6653(a) and 6661(a) in a case involving a deduction for loss that results from an investment "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction."  <u>Sacks v. Commissioner</u>, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.

---

[11]Those additions to tax are for (1) an amount equal to 5 percent of the underpayment and (2) an amount equal to 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment which is attributable to negligence. Such interest runs for the period beginning on the last date prescribed by law for payment of such underpayment and ending on the date of the assessment of the tax or the date of payment, whichever is earlier.  Sec. 6653(a)(2)(B).

Referring to the three-prong test set forth by the Court in Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43 (2000), affd. 299 F.3d 221 (3d Cir. 2002), petitioners raise a reasonable reliance defense.[12] They contend that they were not negligent because (1) "Mr. Hukriede was a competent professional who had sufficient expertise to justify reliance both in his preparation of the Petitioners' tax returns and his opinion as to the various investment alternatives he recommended to the Petitioners"; (2) Mr. Hukriede was provided all necessary information; and (3) "Based on Petitioner-Husband [sic] testimony there is no doubt that he in fact relied in good faith on Mr. Hukriede's judgment and advice."

Respondent argues that petitioners do not satisfy the first and third Neonatology requirements. Addressing the first Neonatology requirement, although respondent acknowledges that petitioners sought the advice of their C.P.A., Mr. Hukriede, respondent contends that petitioners did not seek independent

---

[12]Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43 (2000), affd. 299 F.3d 221 (3d Cir. 2002), sets forth the following three requirements in order for a taxpayer to use reliance on a tax professional to avoid liability for a sec. 6662(a) penalty: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Sec. 6662 is a successor to sec. 6653(a). See Goettee v. Commissioner, T.C. Memo. 2003-43 n.4 ("The substance of former secs. 6653(a) and 6659 now appears in sec. 6662."), affd. 192 Fed. Appx. 212 (4th Cir. 2006).

advice regarding their investment in Platte and that there is no evidence that Mr. Hukriede "had expertise in, or even any familiarly [sic] with, computer equipment leasing transactions or that he ever professed to have such expertise." Concerning the third Neonatology requirement, respondent asserts that petitioners' reliance on Mr. Hukriede was unreasonable because "Petitioners knew that Mr. Hukriede suffered from a conflict of interest" and because after reading the investment memorandum "Petitioners knew or should have known that the represented tax benefits from this questionable tax shelter investment were too good to be true."

As explained below, although reasonable reliance on professional advice may serve as a defense to the additions to tax for negligence, see United States v. Boyle, 469 U.S. 241, 251 (1985), petitioners have not demonstrated that they acted with due care with respect to their investment in Platte and the resulting tax deduction claimed in 1983 for losses relating to that investment.

Arrangements similar to the one that petitioners invested in--a circular, computer equipment sale-leaseback arrangement-- have been the subject of a host of judicial opinions, including those of the Court of Appeals for the Ninth Circuit. See, e.g., Whitmire v. Commissioner, 178 F.3d 1050 (9th Cir. 1999), affg. 109 T.C. 266 (1997); Am. Principals Leasing Corp. v. United

States, 904 F.2d 477 (9th Cir. 1990); see also Waters v. Commissioner, 978 F.2d 1310 (2d Cir. 1992), affg. T.C. Memo. 1991-462, cert. denied, 507 U.S. 1018 (1993); Young v. Commissioner, 926 F.2d 1083 (11th Cir. 1991), affg. T.C. Memo. 1988-440 and Cohen v. Commissioner, T.C. Memo. 1988-525; Moser v. Commissioner, 914 F.2d 1040 (8th Cir. 1990), affg. T.C. Memo. 1989-142.   In the overwhelming majority of cases, courts have denied taxpayers the planned tax benefits of the arrangements on the basis that the taxpayers were ultimately protected from potential liability by guaranties; i.e., because their risk of loss was too remote.  See, e.g., Whitmire v. Commissioner, supra at 1054 ("We conclude that Whitmire was not at risk under section 465 because he was protected from loss by section 465(b)(4) guarantees, and because the scenario under which Whitmire would suffer loss was no more than a 'theoretical possibility' based on the fulfillment of remote numerous contingencies."); Waters v. Commissioner, supra at 1316 ("In this case, there was no realistic possibility that Waters would suffer an economic loss if the underlying transaction became unprofitable."); Young v. Commissioner, supra at 1088 ("The taxpayers were not at risk with respect to personal liability and a loss-limiting arrangement in the circular sale/leaseback transactions with guarantees of rent, indemnities for default and an underlying nonrecourse obligation connecting the taxpayers' obligee Elmco to the taxpayers'

lessees.").[13]  In any event, petitioners' claimed deductions
relating to their investment in Platte are not at issue in this
affected items case.  This case concerns only petitioners'
liability for additions to tax stemming from deficiencies
assessed as a result of adjustments relating to their investment
in Platte.

It is clear that petitioners received some professional
advice before investing in Platte.  Unfortunately, they received
much of that advice from their C.P.A., Mr. Hukriede, who, because
he was compensated on Platte's behalf in connection with the
investment, had an obvious conflict of interest that rendered
reliance on him unreasonable.[14]  See Hansen v. Commissioner, 471

_____

[13]The Court of Appeals for the Sixth Circuit is the lone
Court of Appeals to take a contrary approach--it has adopted a
"worst case scenario" standard as opposed to the "realistic
possibility" standard adopted by the other Courts of Appeals.
See Martuccio v. Commissioner, 30 F.3d 743, 748-751 (6th Cir.
1994), revg. and remanding T.C. Memo. 1992-311; Emershaw v.
Commissioner, 949 F.2d 841, 849-851 (6th Cir. 1991), affg. T.C.
Memo. 1990-246.  Both of those cases (and those espousing the
majority view) were decided long after Mr. Pack invested in
Platte and petitioners filed their 1983 and 1985 Federal income
tax returns.

[14]In addition, for whatever reason, Mr. Hukriede did not
testify at trial, which permits us to infer that his testimony
would not have been favorable to petitioners.  See Wichita
Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946),
affd. 162 F.2d 513 (10th Cir. 1947).  Nor did Mr. Hukriede
provide petitioners with a written opinion concerning their
investment in Platte.  We have only Mr. Pack's testimony, from
memory, as to advice that he received in the early-to-mid-1980s.
Because the facts to which Mr. Pack's testimony relates occurred
about a quarter of a century before trial, Mr. Pack had

(continued...)

F.3d 1021, 1031 (9th Cir. 2006) ("We have previously held that a taxpayer cannot negate the negligence penalty through reliance on a transaction's promoters or on other advisors who have a conflict of interest."), affg. T.C. Memo. 2004-269; see also Helbig v. Commissioner, T.C. Memo. 2008-243 ("To the extent that petitioner relied on the advice of Mr. Toepfer, a promoter with an obvious personal interest in CCJRP, this reliance constitutes a failure to exercise due care before investing in CCJRP.").

Petitioners also received professional advice in the investment memorandum, which was replete with conspicuous warnings about the economic and tax risks associated with an investment in Platte. See supra pp. 5-6. The memorandum even went so far as to inform petitioners that the Internal Revenue Service had already audited returns of other partnerships managed by Mr. Klineman and that the audit agents had recommended that all deductions be disallowed. See supra p. 6. Failing to heed those warnings, and relying on the advice of their conflicted C.P.A., Mr. Pack invested in Platte and petitioners claimed the purported tax benefits of that investment.

Under the circumstances, petitioners acted with a lack of due care in investing in Platte and in claiming deductions

---

[14](...continued)
difficulty making credible and detailed statements as to those facts. As a consequence, the specific nature of Mr. Hukriede's advice to petitioners is unclear.

relating to their interest in Platte on their 1983 joint Federal income tax return. Consequently, petitioners are liable for the section 6653(a)(1) and (2) additions to tax.

II. Addition to Tax Under Section 6661(a)

Section 6661(a) provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement.[15] In the case of individual tax returns filed before January 1, 1987, there is a "substantial understatement" of income tax for any tax year where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6661(b)(1)(A). However, the amount of the understatement is reduced to the extent attributable to an item (1) for which there is or was substantial authority for the taxpayer's treatment thereof, or (2) with respect to which the relevant facts were adequately disclosed on the taxpayer's return or an attached statement. Sec. 6661(b)(2)(B).[16]

---

[15]In 1985 sec. 6661(a) provided for a 10-percent addition to tax. The amount of the sec. 6661(a) addition to tax was later increased to 25 percent for additions to tax assessed after Oct. 21, 1986. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1874, 1951. The retroactive increase of the amount of the penalty from 10 percent to 25 percent does not violate petitioners' constitutional rights to equal protection or due process. See Licari v. Commissioner, 946 F.2d 690, 692-695 (9th Cir. 1991), affg. T.C. Memo. 1990-4.

[16]Where the understatement at issue is attributable to a tax shelter, adequate disclosure is inconsequential; and, in addition
(continued...)

In their brief petitioners argue that respondent "abused his discretion in not waiving the penalty under §6661 based on Petitioners [sic] good faith reliance on their financial advisor and CPA Mr. Hukriede."  Respondent contends that there is no evidence that petitioners ever requested a waiver and that the Court therefore has no basis to review respondent's determination for abuse of discretion.  We agree with respondent.

Because no evidence in the record reflects that petitioners have sought or were denied a waiver of the section 6661(a) addition to tax, we cannot find that respondent abused his discretion in failing to waive the addition to tax.  See Dugow v. Commissioner, T.C. Memo. 1993-401, affd. without published opinion 64 F.3d 666 (9th Cir. 1995).  Moreover, in light of our earlier conclusions regarding petitioners' lack of due care with respect to their 1983 deduction, petitioners have not demonstrated that they satisfied the reasonable cause and good faith tests necessary to obtain a waiver.  See Finazzo v. Commissioner, T.C. Memo. 2002-56 ("Even if petitioners had requested a waiver under section 6661(c), the record demonstrates

---

[16](...continued)
to substantial authority, the taxpayer must demonstrate a reasonable belief that the tax treatment claimed was more likely than not proper.  Sec. 6661(b)(2)(C).  Because the result is the same whether or not we label Platte a tax shelter, we will analyze petitioners' entitlement to a reduction of the sec. 6661(a) addition to tax as though Platte were not a tax shelter.

that they failed to act reasonably and in good faith in deducting the claimed loss".); see also sec. 1.6661-6, Income Tax Regs.

III. <u>Section 6651(a) Additions to Tax Not Limited to Amounts Listed in 1987 Notice of Deficiency</u>

On brief petitioners assert that section 6212(c) prohibits respondent from determining additions to tax that exceed those determined in the 1987 notice of deficiency, as to which they filed a petition that the Court eventually dismissed for lack of jurisdiction.  They argue that the amounts of the additions to tax for their 1983 tax year should be limited to the amounts determined in the 1987 notice of deficiency.  We are unpersuaded.

Section 6212(c)(1) provides in pertinent part that

> If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year * * *

Section 6212(c)(1) applies to bar the Commissioner from issuing a notice of deficiency only if the taxpayer has already filed a petition in response to a valid notice of deficiency--a petition for redetermination filed in response to an invalid notice of deficiency does not trigger the bar of section 6212(c)(1).  See <u>Carnahan v. Commissioner</u>, T.C. Memo. 1991-168 ("The operative language in section 6212(c)(1) is 'notice of deficiency' and implies a valid 'notice of deficiency.'").  The March 19, 1987, notice of deficiency issued to petitioners for

their 1983 tax year was invalid because it was issued before the completion of Platte's partnership-level proceeding. Accordingly, the Court dismissed petitioners' petition and respondent was not barred from issuing petitioners another notice of deficiency (and from determining greater additions to tax for their 1983 tax year) after Platte's partnership-level proceeding had been completed.

The Court has considered all of petitioners' contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for respondent except as to the section 6659 addition to tax for 1983</u>.